Case number 25-1710. Inova Health Care Services for Inova Fairfax Hospital and its department Life with Cancer, et al. v. Omni Shoreham Corporation, a balance. Mr. Lemke for the balance. Mr. Mahoney for the evidence. Good morning, counsel. Judge Randolph is joining us by audio, just so you know. Good morning and may it please the court. The district court's initial ruling on summary judgment was a quintessential and correct application of the summary judgment standard, and the district court spelled out in great detail why there were genuine issues of material fact that compelled a trial and a decision by the jury. Then, in a head-scratching 180, without any additional evidence being submitted or new law being cited, the district court reversed itself and issued a quintessential in a way that invaded the province of the jury. The judge got it right the first time when he said there were genuine issues of material fact, and let me deal on three different issues. The first of them is the materiality of the contract, of the breach of contract, and the D.C. Court of Appeals in the 3511 13th Street case has said that is a quintessential fact issue, and it is. The courts applying D.C. law look to the five restatement factors to determine materiality of the breach, and I think the error the judge made is highlighted by a statement made in page 31 of the appellee's brief where the appellee notes they win because there's no evidence at all to support any of the restatement factors, and I think that's an implicit concession by the appellees that if there is any evidence to support any of those factors. But not any evidence. It has to be evidence on which a reasonable jury could rely in the face of all of the other evidence. True, Your Honor. True, Your Honor, but I don't think a fair reading of this record anyone could conclude that there was not sufficient evidence on those factors, at least three of them, to submit the issue to the jury for a decision, and, for example, the extent to which the first factor is the extent to which the injured party will be deprived of the benefit which it reasonably expected. Well, the reasonable expectations of the parties is an issue in which there was conflicting evidence in the record, and the jury needed to make that determination. On the question of whether the conduct or the breach was consistent with good faith and fair dealing, again, there was evidence in the record disputed which needed to be resolved by the jury. Well, it seems like your clients knew exactly what they wanted. They had contracted for these rooms. They contracted for these same rooms, ballrooms, for a few years. They had negotiated to take out the authority of the hotel to switch rooms. That was removed, and Omni agreed to removing that authority, and then Omni intentionally, knowingly, deliberately chose to give those rooms to someone who was paying more and shuffle this gala off to rooms that there's substantial evidence in the record were too small, too low. You were going to put them partially in a tent. They were going to have a restaurant, which there was evidence in the record was not going to be feasible for their silent auction, low ceilings, the video equipment wouldn't work, cables would be running everywhere, and I don't see anywhere where Omni rebutted any of that. All you got is somebody who throws out a bunch of adjectives about how wonderful, great, tremendous this other option would be. Where did you rebut in the record? There were obstructed views in the blue room. It couldn't accommodate the stage setup, too small to allow volunteers to navigate the room, the having to use a tent exposes people to temperatures, weather conditions, and isn't glamorous in the way ballrooms are. What evidence in the record did Omni show to counter that evidence? Well, Your Honor, there was evidence in the record that those, you're certainly right that there was evidence submitted by Inova in support of- Yes, where's your evidence that it didn't have obstructed views, the stage setup would work, it wasn't too small to have a feasible silent auction, people could navigate the room without tripping over cable cords. What evidence did Omni put in? Your Honor, we had evidence that the rooms would work. That's a conclusion, that's not evidence. Well, Your Honor- I told you there's a bunch of adjectives. Oh, they're wonderful, beautiful, we think it's better. That's not factual evidence that it will work countering this evidence that didn't work. Joint Appendix 262 at paragraph 39, Joint Appendix 263- What did they tell me? Tell me how they show that the ceilings aren't too low, the room's not too small, that there's a stage set up that'll work. Your Honor, at paragraph 39 at Joint Appendix 262, it cited extensive evidence in the record that the space was adequate based upon expected attendance. That's just a conclusion, I'm asking you what facts, they came forward with facts as to why this wouldn't work, where did you counter the facts to show it would work? Just a conclusion, when someone says here's seven reasons why it won't work, right? If we were having an argument with 10 parties on each side and people in the audience of 200 people, this room wouldn't work. This is a great courtroom, it works for today, but it doesn't work for every situation. So where do they say, where's the factual evidence countering? Not conclusions, we think it's great, we think it's fine, we think it'll work, where's the facts? Well, Your Honor, at paragraph 51 on Joint Appendix 263, there's citations as to the seating capacity of the room. That wasn't their complaint. That was one of the complaints. Well, that's not one of the ones I just gave to you. Well, Your Honor, I think... Where does it show that they'd be able to set up the audio-visual displays that they've done every year? Your Honor... Is there anything, maybe it's just a yes or no question, is there evidence showing that they would be able to do it? I don't think there's specific evidence on that point, but the people who manage the catering and banquet facilities at the hotel talked about the needs of this event and said this room would be adequate... I just listed you the needs and you can't... And again, I get that you have people saying it'll be adequate, someone's saying it'll be great. Those are adjectives, those are not evidence. Where's the evidence? Respectfully, Your Honor, I think... You just said there was evidence, a factual dispute about materiality. Well, with respect, I think that is evidence when you have the people who run the facilities at the hotel saying this will work fine for this event. Well, that is not. When someone comes in and says, no, here's what I need with detailed specificity and you stand there and your folks stand there and go, oh. Is there an affidavit where someone explained how the audio-visual would work in this environment? I don't believe that's in the record, Your Honor. Is there evidence on the record from somebody on the staff saying, oh, the silent auction will be able to work here, you'll have enough space for people to circulate, you'll have the same type of flow that you had between the two ballrooms? Well, there was certainly evidence from the people who said the flow would work, but... No, people can flow is not the same thing as people will flow in the way you need to have them flow for a silent auction between rooms and move around easily. Navigating around a restaurant area isn't going to work. Well, Your Honor, I think ultimately that is... I don't think a reasonable jury, because someone from catering gets on the stand and says, we think it will work. And then you come in with all the type of evidence that Inova had here and show detailed reasons, one after another, after another, after another, logistical reasons why it won't work. It wouldn't be reasonable for a jury to reject that concrete evidence in favor of someone just going, I think it'll work, but it's not my event. Well, on that point, Your Honor, I disagree, because I think that's weighing the evidence. And it may be that a jury would weigh the more detailed specific evidence more heavily, but it doesn't mean that the district court should have not allowed them... that a conclusion, we think it will work, counts as evidence. Your Honor, I'm not sure I can cite you a case that detailed... That's the legal conclusion for the jury to make, is whether it would be sufficient or not. That was the question you wanted to submit to a jury. But someone telling a jury, we think it's fine. But Your Honor, I think it went beyond just a mere, it will be adequate. They talked about it had handled significant, elegant events in the past with... That's irrelevant. This courtroom handles arguments every day, almost every day, and they work perfectly for these cases and an audience of this size. But they don't work for other situations. We had on-bank arguments on Tuesday in a different, larger courtroom, because that's what that event needed. So the fact that it worked great for other events is not at all responsive. It's not even contrary evidence that creates a genuine dispute of material fact as to whether it was going to work for this event. Well, Your Honor... It seems to me like you don't have evidence on countering theirs on materiality, right? And the evidence is crystal clear that it was an intentional and deliberate breach of the contract. So I'm trying to figure out where... You can go through more materiality factors if you want, but I'm trying to figure out. Well, Your Honor, I think one of the factors goes to the implied duty... Well, the duty of good faith and fair dealing. Yeah, good faith when you've intentionally done it because someone offered you more money. This was a repeat customer who'd come year after year after year. Well, I understand that, Your Honor, but the issue... But he was offering more money. The issue here is that... The question is, there was evidence in the record of good faith in the form of they were moving it with enhancements to another... So to be clear, when someone has negotiated out of the contract and your client agreed, has negotiated out the ability of the hotel to move rooms, and despite that negotiation, which had been there for years in contract after contract, you do it, you don't ask for their consent or permission? You go, it's this way or the highway? Is that your idea of good faith? Your Honor, there was evidence in the record that supported a jury's conclusion that it was consistent with good faith and fair dealing. No, it was not. You put in evidence that there's a generic practice of hotels doing this. You put in zero evidence, unless you can point me to something that said, after a client has negotiated to not have that option allowed in the contract, you did it anyhow without their consent. Show me where you had evidence that it's common industry practice after it's been negotiated out of the contract and without even consent, their consent, or even consulting with them on the change. What evidence was there of that? A generic circumstance that absent that contract negotiation this happens is irrelevant in this situation. It's just not responsive to the contract at issue and the negotiations at issue. Your Honor, even the district court conceded in its reconsideration opinion that construing the evidence in the light most favorable to Omni meant that there was evidence to support the idea that there was an industry practice of moving this in a circumstance without consent. But that's not responsive to a contract where they negotiated that term out of the contract. Is that right? Was there any evidence like that? Was there an industry practice that notwithstanding expressed negotiations to remove that option from Omni, hotels still do this without consent of the other party? Is there any evidence in the record about that? Your Honor, not to that specific degree. That's the issue in this case. Your Honor, I respectfully disagree because I think it is up to the jury to decide. When you couple the evidence of Omni believed the other rooms would make it a better event, including with the enhancements they were going to include. Better is just an adjective. But they talked about, Your Honor, that they would have a higher level menu and they would do the tented patio. Well, one, who wants a tent when you could have had ballrooms? And they had evidence about the concerns about tent. No response to that. And they put in, again, concrete evidence. It's not going to work for audiovisuals. It's not going to work for our flow. And you're just going, we think it's better. We're going to give you enhancement. We're going to buy a table. We'll give you this other menu. If it was such a great trade, you wouldn't need enhancements, would you? If it was such a great trade, such a great location, you wouldn't need to offer enhancements. Your Honor, I think the evidence was, and it's in the record, that because they were a good customer and they were making the move, they were offering these enhancements. They were making the move. You were forcing them to make the move. That's correct, Your Honor. But because that consistent with what a reasonable jury could conclude is the industry practice that you can move a party without consent, which is in the record, that it is, there was evidence in the record. Negotiations. And that's the issue in the case. I mean, having a dispute of fact that is not relevant to the issue before the court doesn't get you out of summary judgment. Your Honor. We could have 20 witnesses say this courtroom is terrific. It's industry practice in federal courts of appeals. You have a courtroom of the size for ordinary three-member arguments on a panel. You could have endless people saying that. But it would be irrelevant if you're having different cases. Your Honor, I think, well, our position is obviously that there was sufficient evidence in the record, even though the court, the district court, and this court may believe it was heavily weighted toward the plaintiffs. There was evidence that the jury should have considered. But with my remaining time, let me turn to the second issue, which is the district court ruling erroneously as a matter of D.C. law that Omni could not present evidence of failure to mitigate because D.C. law, according to the district court, never required a party to continue dealing with the breaching party. Well, that is not D.C. law. The Sizer case makes clear that's not D.C. law. And thus the district court made a plain error of law in precluding Omni from putting forward the mitigation evidence. And even if you believe there was a breach, then they turn to the issue of mitigation evidence focused simply on this whole exchange that Judge Millett had about what you could provide in terms of a different room. Yes, Your Honor. But there's a difference. Even if you accept Judge Millett's view that for the question of breach, that we didn't have enough evidence to say that, you know, to counter, with which I disagree, but I accept. Before you answer the question I just posed, just getting back to the framing of the contract, you're offering specifically unique rooms within that hotel. That's what you're selling, correct? Well, Your Honor, they're certainly... You're asking the client who goes around and has this demonstration and walks through with whoever your hotel manager is to select their room, that you're selling specific space based on needs of that particular client with respect to their event. That's what you're selling. And then you might have a clause in a lot of these contracts that says it's kind of up to you all as the hotel manager, that from time to time industry practices will allow you to switch a room. But the real problem here, too, is that you're making an opinionated judgment about what the client's needs are as opposed to doing what Judge Millett is saying. Here are the client's specifications and you're only telling us we think that that is sufficient to move it over here. And, Your Honor, that may well go to the question of whether there was a breach which we have not challenged on appeal. But materiality, if you look at the first restatement factor, doesn't talk about whether you're going to be deprived of a term. It talks about whether the injured party will be deprived of the benefit that was reasonably expected. But the benefit is being in that unique character room that has a particular setup that works for this particular event. That's the benefit. And, Your Honor, I think if you look at the evidence, a reasonable jury could conclude that the benefit here was having space that was the proper feel and flow. Those were Mr. Hisaoka's words in his affidavit. But it goes back to what you were selling because, to me, the way you're presenting this case, it's a bait and switch. It's the day after if some lucrative contract comes in, immediately the contract's over in your terms. Your Honor, let me offer this hypothetical. If the Omni had had a mirror image complex of ballrooms on the other side of the hotel, and... But they didn't here. But they didn't. But if they did, would anyone seriously say it would be a material breach to move them, even if they had expressly said, we want ambassador in regency? I think that's a different hypothetical than what's going on here, though. I actually think it's for the jury to decide. I don't think it is because... I don't know that they would be here or having this situation if that's all it was, was move across the hall. But my... Assuming that you still had the nice windows and the ocean view or whatever else that they wanted. But my point, Your Honor, is if you accept my hypothetical that if you had identical ballrooms or closely identical ballrooms, it may not be a material question. No, because you weren't offering identical ballrooms. But anyhow, you'd still have the problem that they negotiated out of the contract, your power to make that switch without their consent. And Your Honor, that's why we're not here. If it turned out that the reason they wanted these rooms, this was a benefit. It came out of his sister, Joan Hisakawa's death or cancer treatments and death. If that was her favorite room, it'd been her favorite ballroom. That was a special place to them. That's why they negotiated the way they did. They entered into a contract with you. We need these rooms. We always have these rooms. I'm not sure the answer is that you could just switch them out without their consent. And Your Honor, well, then, of course, the jury would have to decide that because there was evidence that that is the industry practice. But I think a lot of what you're talking about was there. If we were to go on the website and look at these two rooms, the room you offered as the backup plan, which is the blue room, the blue room, the blue room in the Roberts restaurant and the terrace. And if you look at the ballrooms, does the blue room look like a ballroom? Your Honor, it does. I was there. I looked at it last night. It has a chandelier. It has high ceilings. Is that right? Does it have high ceilings? Not as high as the Ambassador or the Regency, but it has high ceilings. How high compared to the ballrooms? Your Honor, I'd say... No, I'm coming to you. High ceilings. My guess is it's six feet higher in the Ambassador ballroom. It would be my guesstimate. Chandelier. You're testing my memory. I mean, it's not as large a room. That's because it seats 580, I think, as opposed to 1,500, although they were expecting 400 here. You could have told them that when they first were signing up, but you didn't. But, Your Honor, to the point you make, might someone look at the combination of the Roberts restaurant, the patio, and the blue room and say, this is better? Yes. Yes. They might. All right. Okay. Well, quickly back to mitigation then. Yes, Your Honor. Thank you. The district judge ruled, as a matter of law, that in D.C. you can never be forced to mitigate by continuing to deal with the breaching party. That is wrong. That is flat wrong. And he prevented us from putting on mitigation. And even if you accept the view that Judge well, it was a material breach, that's a different question then from mitigation. Because once you establish that there's been a breach and it's material, then you turn to damages. And we pleaded the affirmative defense of failure to mitigate. And we had a right to put on our evidence. And the district judge prevented us based upon his view that you could never be required to continue to deal with the breaching party. So you're asking for a remand, a reversal, and then a remand on just the mitigation issue? At a minimum, a new trial on the mitigation issue. Okay. And then what about the standing issue, third-party beneficiary? Your Honor, that is one where the district court erred in saying there was no genuine issue of material fact on that. Because the question was, you know, the easiest way to prove an intended third-party beneficiary is to put it in the contract. They did not put it in the contract. But there was a practice of this particular third-party sending in information, the tax forms, the payment, et cetera. And that's evidence. But there was countervailing evidence. They were never mentioned in any of the correspondence. The 30B6 representative of Omni said, we didn't know. You just accepted a check from somebody. That's right. And so ultimately— That was a continued acceptance of the check. That's right. And no doubt, in a jury trial, they would argue all of that. But we would argue our evidence and— Would argue that you didn't know that the same entity was giving you the check? Well, as we explain in our brief, Your Honor, there's a difference between receiving the check and what D.C. requires is that both parties intended this entity to be an intended third-party beneficiary. And you can be an incidental beneficiary and not have the ability to enforce the contract. And we had evidence on standing. And the district court, what's remarkable about this situation is the plaintiffs never moved for summary judgment on standing. Omni moved for summary judgment, and the district court concluded in its first opinion there was a—a reasonable jury could conclude that there was standing. And so it—you know, and thus, we didn't win as a matter of law. But that's a big difference from saying a reasonable jury had to conclude. And so we think that they did not—that he erroneously entered summary judgment effectively on the standing issue. And so you would have to go back for a full—well, that issue would have to be taken up in any retrial. Can I ask you, if you were to prevail on this third-party beneficiary argument, that it wasn't summary judgment, appropriate for summary judgment, obviously not to grant summary judgment, but it would need to go to a jury, would you have to have a new—assume—assume for purposes of this question that the other—you don't prevail on the other arguments. You might, but assume for purposes of this question you don't. Do you have to have a whole new damages trial? The court—the jury already broke out different damages percentiles for Inova and Smith. Are you—are you saying, Your Honor, in your hypothetical you would rule against me on the judge not allowing us to put on failure to mitigate evidence? I'm saying for purposes of this question, because I'm trying to understand this jury verdict here and what it means, because it divided up some damages, and then there was another thing called costs that was not divided up. And so— My view, Your Honor, is it would need to go back on your hypothetical. Yes. I'm sure you want it back for a whole trial. I want it back for a whole trial or at a minimum a new damages trial. Right. But assuming we're not going back at all on Inova and only on Smith-Center, I think there would need to be a new trial on the standing issue and if there was standing, what are the damages? Well, if you're going back for a new trial, it's already been determined that it shouldn't have been done summary judgment on the third party beneficiary status. That's what—you wouldn't be having a trial unless we decide that summary judgment was wrongly granted. Right. So you don't go back for— Yes, you go back— And I believe— Why do you need—I guess what I'm trying to ask you is if it turned out, you know, the best that could happen for you, the best that could happen for you is a whole removal of all of Smith's money award, right? Correct. Now, this is why I'm asking the question. So the damages is first broken out separately between Inova and Smith. It wouldn't need a trial on that. You would just take out Smith's share of that. Now, the other side may want to do the trial and then you would, but I'm just trying to sort of figure out how this works. If—do you just take that out and do you divvy up the costs or do you have to have a whole trial on the cost issue alone? It doesn't seem you would need, unless the other side insists, a trial on the already divided damages. Well, the jury put it in three buckets. That's what I'm asking. I'm asking, what do you do with bucket three? What happens to bucket three? And is bucket three the Inova or the Smith-only damages? No, that's the exact same buckets that are on the verdict form. It's the third bucket, which is the cost one, the $37,000 one, right? What they would have received had the breach not occurred is already broken out between the two of them. So that's already determined by a jury. Right. What about the $37,000 in costs? I think you would need to have a new trial, at least, as to Smith Center, as to whether the jury awarded that amount as to them. A full trial over beneficiary status and $37,000, how to divide up $37,000. Well, I mean, my view would be, one would think this jury would need to hear all of the damages evidence on Smith Center since- Not all of it. It's already been divided by a jury. You haven't challenged the jury's award as to its amount? Well, that's correct, Your Honor, but- Or its division between Inova and Smith. So you don't have any complaint about that, assuming you're not having a trial on everything. Obviously, that would take care of all this issue. You haven't complained about that. And so, the third-party beneficiary issue needs to be resolved by a jury. And if they find in your favor of no third-party beneficiary status, it seems to me the only remaining issue is, what do we do with this $37,000 or the category of additional costs? I mean, it certainly is an unusual situation, Judge, where the jury that is deciding whether there's third-party beneficiary status would not also- It would have all been decided together, the damages too. But at a minimum, at the new trial, you would have to have the third-party beneficiary status and the common bucket, the third bucket, as you put it, at a minimum. Okay. But to be clear, you're saying what would go back before a jury is the third-party beneficiary status and then mitigation of the- Well, Your Honor, I mean, as Judge Millett alluded to, we think it should go back for a new trial on everything, liability and if they- But that's our first argument, the materiality. But if you don't agree with us on that, then we think it needs to back for a new trial where we are allowed to put on our failure to mitigate damages because we have challenged the jury award based upon they didn't get to hear our failure to mitigate damages, which was a legal error by the court. So that would be a new trial on damages with- On everything. All the damages. All the damages. So damages, mitigating and third-party beneficiary status. Correct. Okay. But if the only issue is third-party beneficiary- If the only issue is third-party status- Third bucket. I mean, it's already been divided otherwise and you haven't challenged that. You know, it's- Well, we challenged it because of the mitigation evidence not being heard. But I'm just- Again, this is just hypothetical, right? There's- I mean, it strikes me, Your Honor- It's hard to figure out just, you know- It strikes me as an unusual- It strikes me as a very unusual situation where the jury that is deciding third-party beneficiary in bucket three was not also deciding the Smith Center only damages bucket one. You know, it happens if there's trials and there's just a discrete issue on which- I'm not saying this is what would happen, to be clear. I'm just trying to think through different outcomes here to make sure we're testing everything with both counsel here. Where you have a summary judgment then gets overturned on a singular issue and you go back and you do a trial on that singular issue and whatever undisputed or still disputed damages on that. But I want to be clear that if you have the jury verdict indicating what's owed by Omni, you're leaving that intact. You're just trying to mitigate against that number. You're not saying start over on damages. I think you would have to start over on damages, Your Honor, because they might not award, for example, the $60,000 to Smith Center. They might award zero. I mean, they're going to have to come up- You haven't challenged that part of the judgment. You just haven't challenged that jury verdict, which is a wise strategic choice. It's virtually impossible to do. Well, Your Honor- Why would we redo that? Well, we challenged it- Again, assuming, for my hypothetical, assuming- Right. I think we both, all three of us, thoroughly understand that you want a whole new trial on everything. I mean, at this point, your attorney's fees are going to have to be 10 times whatever the damages were actually in this case, but you want to go back and do this and have Omni's behavior in this case advertised all over a courtroom and before jurors in the district again. That's your choice. But, Your Honor, I want to make clear that we're all on the same page because your hypothetical where it would be only the third-party beneficiary in bucket three was based on the assumption that the failure to mitigate is not going back. That's my question. That was just a hypothetical question. Yes. I agree with you that if that mitigation goes back, then all damages go back. And if you win on your materiality claim, then everything goes back. And that's the point I wanted to clarify for Judge Childs, that if the mitigation goes back, then the damages goes back in its entirety for a new trial on that. Okay. Any more questions? No. Okay. Thank you. Thank you, Your Honor. A couple of minutes for rebuttal. Is he here? Okay. Morning, and may it please the Court. On the mitigation of damages issue, the district court did not irrigate jury's role in deciding whether ANOVA fulfilled its duty. Instead, it appropriately determined which facts the jury could consider. That's a legal question for the Court. In addressing that legal question, the Court was not presented with any authority by Omni requiring an injured party to mitigate by renegotiating the contract after the breach. But it's up to the Court to determine what the law is, regardless of what the parties submit to it. Yes. So what would you say about the Cizer case and the ability to actually mitigate? Right. And Omni never argued before Judge Bates that Cizer required ANOVA to mitigate by renegotiating the contract. But that's not my question. The question is, what is the law? Right. That's for us to determine and get the law right to the jury. Cizer merely concluded that in appropriate circumstances, the injured party may continue to perform a contract if that puts him in exactly the same position. That's not what happened here. Omni did not offer to continue to perform the contract and provide ANOVA with exactly the same benefit after its breach. Given the absence of any D.C. authority on that question, the District Court appropriately looked to decisions in other jurisdictions which make clear that ANOVA had no duty to renegotiate the contract after it was materially breached. That would turn contract law on its head and constitute an unreasonable overreach of mitigation principles by rewarding the breacher. Under the Restatement 2nd, Section 350, which the Court cited, whether alternative transactions are an adequate substitute depends on the similarity of the performance and the places where it would be rendered. Omni reassigned the gala to radically dissimilar space. So you're saying that in Judge Millett's earlier hypothetical, or actually your friend on the other side, if it was a room across the hall that was identical, then this might be a different case about mitigation. It might be different, but that's not our case. An injured party, as a matter of law, as this Court held in Kamler and Buckley-Madison, is at liberty to reject an alternative that's dissimilar to the original. Omni was at liberty to reject the dissimilar alternative proffered by, I'm sorry, ANOVA was at liberty, proffered by Omni, and as a matter of law, was not obligated to host the gala in those fundamentally dissimilar alternative spaces. So ANOVA, as a matter of law, acted reasonably by refusing Omni's post-breach offer. Omni, as a matter of law, the party who forced the choice, may not argue that ANOVA should have accepted Omni's offer of alternative space over moving the gala to an alternative venue, just because Omni thought that was more advantageous to Omni. Now, whether ANOVA fulfilled its duty to mitigate by seeking an alternative venue elsewhere, instead of rescheduling the gala, was an issue properly left for the jury, and the jury decided that. But as a matter of law, the court was correct in determining that Omni could not maintain a trial, that ANOVA should have accepted the alternative spaces that constituted the very breach that was at issue. Well, I thought your point was not that it just constituted the very breach, but that they were dissimilar or inferior. It's both, yes. And I think you need to say them together, because I thought you just agreed that if the very breach that they were offering was rooms right across the hall that were mirror images of the other, it'd be fine. So I think you need, it can't just be that you could reject because it's different and it's what they're offering. Right. It's a material breach in part because it's dissimilar. Right. And it is contrary to the reasonable expectation of ANOVA over the years to use that same room that the parties had negotiated to delete the reassignment provision in the contract to. So this was something that occurred from 2013 to 2019. That was the essence of the contract. That's why it was entered into by ANOVA. As for standing, Omni's request that it be given a jury trial on Smith Center standing rings hollow. Omni had that opportunity in the earlier jury trial, but never put standing at issue and standing was never controverted. That's because there was really no genuine issue of material fact. I'm very confused. They didn't, they weren't allowed. No, we're talking about standing, Smith Center standing. Okay. So third party beneficiaries, which is not standing anymore. The Supreme Court cleared this up some years ago. Well, it's Omni's argument that Smith Center lacks prudential standing. Yes. Because it's not a third party beneficiary. They had the opportunity to litigate that at trial. The damages trial?  Or to raise the issue pre-trial. They had already raised it. The district court had granted summary judgment in your favor on that issue. No, Judge Bates actually, in his opinion, post-trial opinion, made the appropriate remark that the issue of Smith Center standing was not controverted at trial because it was decided on summary judgment by Judge Bates. Omni never disagreed with that. Of course they disagreed. They opposed summary judgment. No, they never raised the issue of standing. After summary judgment is granted to Inova, they were still supposed to ask to prove that at a damages trial? At a minimum, they should have raised it if they thought it was controverted. In fact, when they filed their- Of course they thought it was controverted. They opposed summary judgment. Well, but when they filed their post-trial brief asking for a new trial, they basically argued that the court should have resolved standing at trial. Our response was, no, it wasn't controverted. You didn't raise it because it had been adjudicated on summary judgment. That is an attack on the district court. To say that something has to be adjudicated at trial is to say the district court erred in granting summary judgment. Well, my point is it was never raised at trial, so- Of course not. I think a district court would be very mad if they entered summary judgment on something you lose. And then when someone said, okay, I've lost, but gee, I sure would like to try this before the jury on damages. Well, the point is they never raised it pre-trial. Wouldn't they have to- Of course they raised it pre-trial. That's when summary judgment is pre-trial. Judge Bates made the comment that they should have raised it pre-trial if they thought it was controverted. They didn't. And that's just another indication- Summary judgment, was summary judgment pre-trial? Summary judgment was pre-trial. Did they raise there that they didn't think, that they opposed summary judgment on third-party beneficiary status? They did, yes. So it was controverted pre-trial? It was, but it was controverted- They're supposed to keep raising it. Well, that's the remark Judge Bates made. Wait a minute, you can tell me he made that remark. Can you tell me any federal rule or case decision that says, having lost summary judgment, you may not challenge that legal ruling unless you try, you object again on an entirely different issue called a trial on damages? Well, it's Omni's point, or it's their position, that the summary judgment wasn't adjudicated. Okay, so do you have a- No, that it was not properly adjudicated at summary judgment. That's their position. That it was improperly resolved at summary judgment. Do you have, I'm going to ask again, a single case that says, they had to raise it again at a trial that was limited to damages? Well, the court has to ensure that it is subject matter jurisdiction at all. It's not, third prudential standing is not subject matter jurisdiction. Third party beneficiary status is not subject matter jurisdiction. Supreme Court said in Lexmark, we're not doing this prudential standing thing. It just goes to failure to state a claim. That's not jurisdictional either. There is nothing, nothing about subject matter jurisdiction here. Smith Center, I assume you would agree, had Article III standing. They were injured. They lost money. Jurisdiction's established. That's it. There's nothing more to be done. Well, it's our position, Your Honor, that there was no genuine issue of material fact on Smith Center's standing. The fact that it wasn't raised by Omni before trial is an indication of that. None of the three types of evidence identified by Omni is sufficient to disturb that undisputed fact. Third party need not be named in a contract if the surrounding circumstances tend to identify it as a beneficiary. What surrounding circumstances are you relying on that would have required a reasonable jury to find that they were a third party beneficiary? Not that they could have, but would have required them to do it. Right. So Omni's position is that they had no knowledge of Smith Center. That's clearly not the case. The record is overwhelming that over the years, Smith Center paid hundreds of thousands of dollars. Knowledge of the existence of Smith Center, knowledge that Smith Center is funding or helping to fund a gala, is not showing knowledge that they were a party to this contract. A third party can be implied. It can be implied, but you just said that they were writing checks. Right. They were writing checks. They were submitting forms indicating... What form? Two forms. One was the tax-exempt form indicating that they, and not ANOVA, was exempt from D.C. sales taxes, which was what was required by the contract. No, I understand that, but people, again, fill out all kinds of forms. That doesn't make them a party or put someone on notice that they're a party to a contract. The other form they submitted was a direct billing application, which identified them as the organization for the gala. No, the contract identified ANOVA as the organization for the gala. Contract did, but the submission of a direct billing statement identified Smith Center as the organization. That was submitted to Omni for purposes of conducting the gala. Omni's former catering manager testified that, of course, Smith Center was a beneficiary over the years, given their role in the proceeding and also the amounts of money they paid and the forms they submitted. That may be a persuasive argument you can make or not, but I hardly see how that compels a conclusion that they were a third-party beneficiary when they aren't named in the contract. The organization that is specifically identified as the organization for this gala benefit is ANOVA and not Smith, and someone else later sends in a check, fills out a credit check form because they're sending in the payments. But that was even just to send a payment not to Smith or a bill. Don't send the bill to Smith. Send the bill to Mr. Pasuaka. That's not, I don't know that that's, it would be unreasonable, irrational for a jury to say, sure, they were involved. It's a big gala. Lots of people are involved, but contractual beneficiary, that's a higher standard. Well, in the Piedmont Resolution case, the defendant argued essentially the same as Omni's arguing, which is they had no knowledge of the other party. And that case was even weaker than this case. The contract didn't name the third party, but there were wiring instructions that named the third party, which were related to performing the contract. And the court said that was enough to put the other side on notice that this third party had involvement in the transaction. Here, you have multiple years, year in and year out, of Smith Center paying both the deposit and the cost of the gala. What might have happened in other years under, those were all independent contracts. We're just looking at this year in this contract. Right. The prior year contracts were based on a template. All the contracts were the same, but for changes to the menu and pricing for that year, all the terms were identical and they were all based on Omni's template. Did you have evidence that Omni understood in those prior years that Smith was a third party beneficiary and agreed to that? Yes. You have the same evidence? What evidence do you have that Omni understood when it signed the contract that there was this third party? The testimony of Dominic Sanchez, who... Who was? He was the former catering manager, who was the initial contact with Mr. Hisioka. Catering managers execute contracts? Yeah, yeah. So he signed the contract? He did. The initial one, 2013. No, no, this contract. No, by the time of the... He was long gone by the time... He was gone. I'm not sure he was long gone, but he was gone. He wasn't even around when this contract was signed. No. I think he left two years earlier, but it's the same contract, essentially. I know, but it's hard to carry that knowledge forward when the person you say had it was gone for two years. It's not that... I understand your argument. I'm just trying to figure out the high standard for no rational jury could conclude. All right. So that is our argument. We also argued that the district court's conclusion is bolstered by other surrounding circumstances. And it's undisputed that Inova, by entering into the GALA contract as the promisee, intended to benefit Smith Center, who with Inova was a party to the fundraising agreement. That was the agreement where the parties agreed amongst themselves how to allocate the revenue from the GALA. Is that shared with Omni? The fundraising agreement? No, but... And you just said agreed amongst themselves, right? The beneficiaries. Yes. Yes. So... We're trying to impute the knowledge over to Omni. That's what we're getting at. No, understood. But as the court found in Safer versus Pepper, it's the intent of the promisee under the restatement that must be given predominant consideration. And this is called for by both the first restatement, section 133, the second restatement, section 302. Both restatements indicate that a beneficiary is an intended beneficiary if the circumstances show that the promisee intends to give the beneficiary the benefit of the promised performance. That's what happened here. So that's an additional factor that the court should consider in finding that Smith Center had standing. The intent of the promisee in OVA. Thank you, counsel. I think you're over time. Over time here, if you want to take a minute to sum up, that would be fine.  So it's our contention that the court did not err in finding that Smith Center had prudential standing and was entitled to summary judgment. There's no reason to remand the case on the mitigation of damages issue. There's no question that the breach was material. None of the material factors posed by Omni are satisfied. In addition, there are material factors that are ignored. Omni never suffered a forfeiture. There was no likelihood that Omni would cure its breach. The implied covenant claim was presented to the jury because it's an experiment. It's an express term of the contract. And the jury was instructed on breach of contract, not breach of express contract. And no reasonable jury could find that Omni did not breach the covenant. Thank you very much, counsel. Mr. Lempke, we'll give you two minutes. On the question of the failure to mitigate and the taking that away from the jury, if you assume for the sake of argument that there was a material breach and you were turning to damages, the fact that there was a material breach meant that there wasn't going to be what they really wanted, which was the ambassador in the Regency ballroom. So they had to go to some alternate option. And they put on evidence that where they went at the Mandarin Oriental was not a good flow for the silent auction, et cetera. We should have been allowed to put on evidence to show that even if, in their view, the Blue Room and the Roberts Restaurant and the patio, the terrace were not as good as the ambassador in the Regency, they could have mitigated their damages by using them as opposed to going to the Mandarin Oriental. So suppose after you told them you were kicking them out of what they contracted for, you're booting them out. Here's the other option we have for you. This is only a few months or four months away from the gala. I've got no choice. I guess I'll take it. Would that have been an accord and satisfaction? Well, that's not the facts here, Your Honor. I haven't really...  I'm asking you, of course, we ask questions all the time that aren't the facts. Right. I want you to, you said, I want an answer, yes or no. Would that have been an accord and satisfaction? I don't think so, Your Honor.  Well, I mean, I think, I mean, well, the question is, could they still say there was a breach and... Not if they had said, choice do I have? I guess I'll take it. And had taken it. That sounds to me like a definition of accord and satisfaction. Well, Your Honor, then I'll agree with you. It may have been, but...  What case do you have that they have to accept the very breached terms? That's the problem for you. You don't want mitigation. What you wanted was accord and satisfaction. No, I disagree, Your Honor. If they'd accepted it, that's what it would have been. Well, Your Honor, let me... That's the difficulty with the argument you're presenting. I'm just trying to... All right. ...present the difficulty with this argument is that you say, we breached knowingly, intentionally, someone paid us more. And so we're going to offer you this. And we know it's not as good because we're giving you enhancements. I'm going to finish my question here. Yes, Your Honor. We're giving you these enhancements. And your argument on mitigation is, and they had to take it. And of course, had they taken it, they'd have no case at all, as you just acknowledged. Because when someone breaches and says, well, I'll sub this in. And you go, okay, I'll take that instead. That's an accord and satisfaction. Your Honor, I think there's law out there that you can't basically extort them into taking something less than the contract. But here's the point. The breach was... I mean, your argument here is you think a jury could have done that. No, Your Honor. Maybe you couldn't have, but a jury could have said, you should have just taken it. Your Honor, here's the difference. The breach was not having it in the ambassador in the Regency Ballrooms. That's what was called for. That was the breach. Now, they then get to show their damages. And the question is, did they mitigate their damages? Not an accord and satisfaction to go to zero. But if they had said, well, we think this is breach and we don't agree with this. But, okay, this is our... We'll suffer the least damages if we take the Blue Room and the patio and the Roberts Restaurant. Now, we should have been allowed to present evidence that that was a better option for than the Mandarin Oriental. It's very difficult. Your position in this case is a really difficult one for contract law when things are offered that are so dissimilar, which was not the Cizer situation. So dissimilar. Can you recognize it? Spread over three separate rooms and a tent. It's very dissimilar. But we think you had to take it. It was the best option for you. And yet, if I were their counsel, I would have said, if you just accept that, you've got to have no claim at all because they're going to argue accord and satisfaction, which you just agreed you could have, at least. Your Honor, they certainly could have reserved their contract, right, if they agreed to do it. They could have reserved their right of breach. But the key is, Your Honor, is... They had reasonable choices. That's right. I mean, that's the issue is once there's a breach and they're not... I question whether yours was a reasonable choice, but that's... Yes. I mean, I think there is evidence. And I do hope you'll look at Joint Appendix 436 and 437, which was the affidavit of the general manager of the hotel talking about all of the high-level VIP events that they had had in these spaces. That's just utterly non-responsive. That's utterly non-responsive. I understand. Who's been there for a different event? I understand your view on that. No, no. That's just not relevant to a jury. Different people wanting different things for different purposes doesn't speak to this situation at all. I wouldn't even let that before the jury. That's ridiculous. All right. That goes to breach. And once there's a material breach, then you have an obligation to mitigate your damages. They did not want to cancel the event, so they had to have it somewhere. And it may be... It's not that they would have no damages. It's just, did they mitigate their damages? And there was sufficient evidence in the record to show that this would have been the better option. So you're just trying to take the... What was it? $127,000 verdict down. Right. To saying that... The jury should have considered whether there was a better option. Okay. But is it only monetary? You know, because again, you had a room that you're offering for character, for, you know, specificity of certain things. And it's not just the difference in cost. That goes to breach, Your Honor. I mean, that... But once you say, okay, there's a material breach, now we're moving on to damages. Then we're into the different legal construct of mitigation. And the fact that it's not the... They weren't going to have what they really wanted at that point. And so they were coming up with a lesser option. And they came in and said the Mandarin Oriental was a lesser option. And what we should have been able to do is present evidence and said, well, you could have mitigated your damages if you had done these two. They might not have taken the damages to zero, but it would have been less. And we have the right as improving our affirmative defense to put on that case. And the fact that, you know, we had breached, I think they're wrong on CISR that there is no absolute prohibition under D.C. law that you don't have to deal with the breaching party again. And so... You have a case under D.C. law where they don't have... Where they still have to deal with the breaching party when it was a bad faith breach and the counteroffer was materially dissimilar. I do not have a case like that, Your Honor. But I don't think that matters because the issue is... The issue is... Stand up here just real quick because we're over on time. The issue, Your Honor, is once the breach has been established, you have to mitigate your damages. I understand that. All right. Thank you, Your Honor. Thank you very much to both counsel. The case is submitted.
judges: Millett; Childs; Randolph